# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

| | |
|---|---|
| **6064 NOA, LLC d/b/a 64 NORTH, THE PATIO, AERO, THE CORNER, and THE SOCIAL; 4654 NOA, LLC d/b/a THE BEACHAM; and CELINE ORLANDO, LLC d/b/a CELINE,**<br><br>**Plaintiffs,**<br>v.<br>**THE CITY OF ORLANDO and POLICE CHIEF ERIC SMITH in his official capacity,**<br><br>**Defendants.** | Case No.: 6:24-cv-01665 |

## CITY OF ORLANDO'S MOTION TO DISMISS COMPLAINT

City of Orlando (the "City"), and Police Chief Eric Smith (collectively, the "Defendants" or the "City"), under Federal Rule of Civil Procedure 12(b)(6), respectfully requests this Court dismiss Plaintiffs' Complaint and states:

### I.    Summary of Argument

Government permission to sell alcoholic beverages is not a recognized property right in the State of Florida. Under Florida law, unless otherwise authorized by a county or municipality, the sale of alcohol between the hours of midnight and 7 a.m. the following day is prohibited. This regulation has time and time again been upheld by Florida courts. The City, by a duly-enacted municipal ordinance, has expanded the hours for sale of alcohol. Where those extended hours

of alcohol sales are accompanied by significantly higher crime rates,[1] the City has required operators to take certain safety precautions and contribute to the cost of extra-duty police officers to further its legitimate police-power purpose. Here, however, to pressure the City into reducing the costs associated with the ordinance, and to improperly shift the cost of policing the harm and danger they cause to the community to the taxpayers of the City, Plaintiffs make questionable constitutional arguments related to their perceived right to sell alcohol after midnight. Because no such right exists and the ordinance clearly passes the rational basis test, this Court should dismiss Plaintiffs' Complaint.

## II.    Factual Background

For decades, Florida law has regulated the time for sale of alcohol and intoxicating beverages. *See* Doc. 1-3. Specifically, Fla. Sta. § 562.14 prohibits alcoholic beverages from being "served or consumed in any place holding a license . . . between the hours of midnight and 7 a.m. the following day." Only by county or municipal ordinance are businesses allowed to serve alcohol after midnight. *Id.* Unfortunately, within the Downtown Entertainment Area ("DEA"), an increase in violent crime and other issues related to public safety and crowd control

---

[1] Notably, as recently as October 31, 2024, a shooting in the City of Orlando Downtown Entertainment Area ("DEA") around 1:07 a.m. resulted in the death of two people and serious injuries to six others. *See* https://www.orlandosentinel.com/2024/11/01/2-dead-6-hurt-with-teen-suspect-in-custody-after-downtown-orlando-shootings-police-say/.

compelled the City to act. In 2023, the City amended Section 33.03, City Code of the City of Orlando, Florida (the "Ordinance"), to provide guidelines for the sale and consumption of alcoholic beverages after midnight. *See* Doc. 1 ¶ 42. In doing so, the City gave establishments within the DEA the ability to sell alcohol between the hours of midnight and 2 a.m., if they obtain a permit. Doc. 1 at ¶ 43-44.

### III. Legal Standard

Rule 12(b)(6) allows a defendant to raise a defense based on "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a pleading must provide a short and plain statement of the claim and the grounds on which it rests, and "plausibly allege all the elements of the claim for relief." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1339 (11th Cir. 2017).

### IV. Argument and Memorandum of Law

**A. Plaintiffs do not have a constitutionally protected interest.**

Plaintiffs' Takings Clause and substantive due process claims in Counts I and II fail as a matter of law because a "license to sell alcohol is not a property interest in Florida for the purposes of a constitutional claim." *Lexra, Inc. v. City of Deerfield Beach, Fla.*, 593 Fed. Appx. 860, 864 (11th Cir. 2014) (affirming dismissal of a due process claim). To state a Takings Clause claim, "a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected." *Givens v. Alabama Dept of Corrs.*, 381 F.3d 1064, 1066 (11th Cir. 2004).

"The Takings Clause protects private property; it does not create it." *Id.* Likewise, substantive due process protects fundamental rights, which are created by the Constitution. *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279 (11th Cir. 2014). For claims under the Takings Clause and Due Process Clause, "state law" or other "existing rules or understandings" determine whether a particular property interest is protected. *See Givens*, 381 F.3d at 1066; *Lexra, Inc.*, 593 Fed. Appx. at 864.

The right to sell alcohol is not a constitutionally protected property right. Under Florida law, "a liquor license 'is not property in a constitutional sense.'" *Walling Enterprises, Inc. v. Mathias*, 636 So. 2d 1294, 1296–97 (Fla. 1994) (quoting *State ex rel. First Presbyterian Church of Miami v. Fuller*, 187 So. 148, 150 (Fla. 1939)). A liquor license different from "other 'general intangibles' because it is issued as a matter of privilege, not as a matter of right, by the government, and the government has total control of its use." *U.S. v. McGurn*, 596 So. 2d 1038, 1041 (Fla. 1992). A liquor license "confers no right or estate or vested interest," and "it is at all times revocable at the pleasure of the" government. *Fuller*, 187 So. at 150.

Florida law carefully "distinguish[es] the commercial context from the constitutional" context. *Persaud Properties FL Investments, LLC v. Town of Fort Myers Beach, Florida*, 658 F. Supp. 3d 1072, 1081 (M.D. Fla. 2023) (dismissing with prejudice plaintiff's due process claim). Even though a liquor license has been recognized as property "in the commercial sense," a liquor license "under the laws

4

of this state is but the grant of a privilege which confers no vested rights in the licensee and as such is not property in the constitutional sense." *Yarbrough v. Villeneuve*, 160 So. 3d 747, 747–48 (Fla. 1st DCA 1964). Florida law simply "does not support constitutionally protected property rights in a liquor license." *Persaud Properties FL Investments, LLC*, 658 F. Supp. 3d at 1082.

Here, Plaintiffs did not allege facts establishing or supporting an inference that the City violated a constitutionally protected right. *See Moody v. City of Delray Beach*, 609 Fed. Appx. 966, 967 (11th Cir. 2015). Plaintiffs' claims are based on conditions imposed on their license to sell alcohol after midnight until 2:00 a.m. *See, e.g.,* Doc. 1 at ¶¶ 43-44, 48-52, 112-15, 124-25 & 133-34. The Ordinance violated no constitutionally protected rights.[2] The privilege to sell alcohol between midnight and 7 a.m. is not a constitutionally protected right, and it is generally prohibited by Florida law. *See* § 562.14(1), Fla. Stat. It is only through "county or municipal ordinance" that establishments may sell or serve alcohol after midnight. *Id.* The fact that the City requires the Plaintiffs obtain a permit to do what the State otherwise prohibits is not enough to show a constitutional taking. Because

---

[2] Plaintiffs' reliance on *Sheetz v. Cnty. of El Dorado,* 601 U.S. 267 (2024), *Nollan v. California Coastal Com'n*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994) is misplaced. *See* Doc. 1 ¶¶ 107-12. Those cases are premised on the plaintiff holding a constitutionally protected property right. No such right exists here.

5

"Florida law does not provide a basis for [the] due-process" or takings claims, this Court should dismiss Counts I and II. *Lexra, Inc.*, 593 Fed. Appx. at 864.[3]

### B. No Constitutional Taking (Count I).

Even if the Plaintiffs have a property right to sell alcohol, they have failed to state sufficient facts to establish an unconstitutional taking. Fifth Amendment takings claims fall into four categories: just compensation, due process takings, arbitrary and capricious due process and equal protection. *New Port Largo, Inc. v. Monroe Cnty.*, 873 F. Supp. 633, 638 (S.D. Fla. 1994), *aff'd*, 95 F.3d 1084 (11th Cir. 1996) (citing *Eide v. Sarasota County*, 908 F.2d 716, 720 (11th Cir.1990). Plaintiffs allege that they have a claim in the just compensation category. *See* Doc. 1 at ¶ 104.[4]

Regulatory takings can occur if the "government 'imposes regulations that restrict an owner's ability to use his own property.'" *Orlando Bar Group, LLC v. DeSantis*, 339 So. 3d 487, 491 (Fla. 5th DCA 2022) (*citing Tahoe-Sierra Pres. Council,*

---

[3] Counts I and II also improperly combine two distinct claims into a single count, which constitutes an impermissible "shotgun pleading" requiring dismissal. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 & n.13 (11th Cir. 2015).

[4] In Plaintiffs' extensive (and sometimes unclear) Complaint, they seem to allege several arbitrary government actions. First, Plaintiffs seem to allege the decision to apply the Ordinance to bars with occupancies equal to or greater than 125 persons is, to some degree, arbitrary. *See* Doc. 1 at ¶¶ 64, 115, 126, 137, 138. Next, Plaintiffs allege the Police Protection Fees are subject to arbitrary increases depending on decisions made exclusively by the Chief of Police. *Id.* at ¶ 136. Whether Plaintiffs are conflating constitutional arguments, or being intentionally unclear under which theory they travel, the City's actions, under either substantive due process or equal protection analyses, pass constitutional muster.

6

*Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321-22 (2002)). The Plaintiffs' Complaint tries to state an as-applied claim of a partial taking. In an as-applied claim, "the landowner challenges the regulation in the context of a concrete controversy specifically regarding the impact of the regulation on a particular parcel of property." *Collins v. Monroe Cnty.*, 999 So. 2d 709, 713 (Fla. 3d DCA 2008).

The standard for evaluating as-applied claims originated in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). *See Ocean Palm Golf Club Partnership v. City of Flagler Beach*, 139 So. 3d 463 (Fla. 5th DCA 2014). In *Penn Central*, the Court identified three factors to apply when engaging in an analysis of whether a regulation is a taking: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Leon Cnty. V. Gluesenkamp*, 873 So. 2d 460, 467 (Fla. 1st DCA 2004).

In *Orlando Bar Group, LLC.*, 339 So. 3d at 493, other regulations affecting the sale of alcoholic beverages in the City of Orlando were examined under this standard. There, a group of bars, coincidentally within the DEA, challenged executive orders signed by Governor DeSantis that suspended the sale of alcoholic beverages for on-premises consumption for a period of time during the COVID pandemic. *Id.* at 490. The court applied the three *Penn Central* factors and determined that the executive orders were not a taking. To make this

determination, the Fifth District went through each factor. There, the first factor supported the establishments since there was an undisputed economic impact. *Id.* at 493. However, the second factor weighed against the establishments since sellers of alcohol are a highly-regulated business. *Id.* at 493. *See generally* Ch. 561-568, Fla. Stat. (2023). The Fifth District stated that, because alcoholic beverages are in such a highly-regulated business, "[a]ppellants should have also been on notice that further regulations could be enacted." *Id.* at 493-94.[5] Finally, in determining that the third factor also weighed against the bars, the Fifth District wrote that "the COVID orders represented a valid use of the state's police power to protect the general welfare, as noted by the trial court with citations to several other contemporary COVID decisions." *Id.* at 494.

Applying the *Penn Central* factors here demands the same result. Given the consistent holdings that there is no property right in the sale of alcoholic beverages and the substantial regulations in chapters 561-568, Fla. Stat. (2023), owners of

---

[5] In a variety of contexts, Florida courts have held that administrative approval to conduct a "privileged activity is not a protected property interest." *Persaud Properties FL Investments, LLC*, 658 F. Supp. 3d at 1081 n.2; *Lite v. State*, 617 So.2d 1058, 1060 (Fla. 1993) (finding "there is no property interest in possessing a driver's license. Rather, driving is a privilege and can be taken away or encumbered as a means of meeting a legitimate legislative goal"); *Sickon v. Sch. Bd. of Alachua Cnty., Fla.*, 719 So.2d 360, 366 n.9 (11th Cir. 1998) (holding that a school board did not violate any property interest of a teacher when it chose not to renew the teacher as the band director); *Reserve, Ltd. v. Twn. of Longboat Key*, 933 F.Supp. 1040, 1043–44 (M.D. Fla. 1996) (holding that a revoked building permit was "created by state law and falls comfortably short of a fundamental right").

8

these establishments are on notice that further regulations could be enacted. The regulations enacted by the City bear directly on the government's police-power to protect the general welfare. If the government can deny permits in furtherance of "a 'legitimate police-power purpose,'" it can also "place conditions on the permit that serve the same end." *Sheetz v. County of El Dorado*, 601 U.S. 267 (2024) (citing *Nollan v. California Coastal Com'n*, 483 U.S. 825, 836 (1987)).

Numerous Florida courts have dismissed claims like the ones Plaintiffs advance here. *See Playpen S., Inc. v. City of Oakland Park,* 396 So.2d 830 (Fla. 4th DCA 1981) (reasoning that a bar did not have clear legal right to injunction, since city has statutory power to set times for sale of liquor, and the ordinance passed by referendum); *Other Place of Miami, Inc. v. City of Hialeah Gardens,* 353 So.2d 861 (Fla. 3d DCA 1977) (affirming dismissal for failure to state a claim, where a bar complained that city's refusal to grant grandfather status was unreasonable); *S. Daytona Rests., Inc. v. City of S. Daytona,* 186 So.2d 78 (Fla. 1st DCA 1966) (affirming denial of injunctive relief, where restaurant complained that liquor sales ordinance was capricious, a deprivation of property rights, and an unreasonable exercise of police-powers, because section 562.14, Florida Statutes, gives cities the power to regulate sale of alcoholic beverages); *Vill. of N. Palm Beach v. S & H Foster's, Inc.*, 80 So. 3d 433, 438 (Fla. 4th DCA 2012) ("Pursuant to section 562.14(1), the Village had the authority to enact its ordinance regulating sale of alcohol.").

9

Here, Plaintiffs try to advance a Takings Clause claim in federal court based on a statute and regulatory scheme that Florida courts have routinely rejected. Florida's law prohibiting alcohol sales after midnight has been approved time and time again, and the City's decision to enact the Ordinance to grant Plaintiffs the ability to sell alcohol under limited circumstances cannot be a constitutional taking. Count I must therefore be dismissed.

### C. No Violation of Substantive Due Process (Count II).

Dismissal is appropriate because the Complaint shows the City had a rational basis for enacting the Ordinance. *See Kentner v. City of Sanibel*, 750 F.3d 1274, 1281 (11th Cir. 2014) (affirming dismissal of a substantive due process claim because plaintiffs "plead at least two rational bases for the Ordinance"). Substantive due process "protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994). Substantive due process does not protect substantive rights that "are created only by state law . . . because substantive due process rights are created only by the Constitution." *Id.* (quotation omitted).

Land use rights, and property rights in general, "are state-created rights." *DeKalb Stone, Inc. v. Cnty. of DeKalb, Ga.*, 106 F.3d 956, 959 (11th Cir. 1997); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir. 1989). Substantive due

process does not protect "state-created property rights." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279 (11th Cir. 2014). However, an exception to this general rule exists where "a person's state-created rights are infringed by a 'legislative act,'" and under those circumstances, "the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational governmental action." *Id*. Substantive due process challenges that do not implicate fundamental rights are reviewed under the "rational basis" standard. *Fresenius Med. Care Holdings, Inc. v. Tucker,* 704 F.3d 935, 945 (11th Cir.2013) ("When a challenged law does not infringe upon a fundamental right, we review substantive due process challenges under the rational basis standard.").

Whether the Plaintiffs are challenging the Ordinance as unconstitutional for placing limitations on city-created land use rights to sell alcohol after midnight,[6] or for granting "unfettered discretion" to the Chief of Police or as an "arbitrary exercise of the powers of government," rational basis still applies. Doc. 1 at ¶¶ 131-

---

[6] Plaintiffs are challenging the Ordinance because it places limitations on city-created land use rights to sell alcohol after midnight. The State of Florida restricts the sale of alcohol after midnight, "unless otherwise provided by municipal ordinance." Doc. 1-3 at 1 (citing Fla. Stat. § 562.14). The City expanded this land use right through a prior version of the Ordinance that permitted licensed establishments to sell alcohol until 2 a.m. Doc. 1 ¶¶ 43-44; Doc. 1-3 at 1. The Ordinance repealed the expansion of this state-created property right, unless establishments obtained a permit. *Id.* Here, Plaintiffs are attacking the Ordinance "on its face rather than contesting a specific zoning or permit decision made under the auspices of the Ordinance," and thus, Plaintiffs are challenging a legislative act. *Kentner*, 750 F.3d at 1280. Accordingly, the Court should consider whether the Ordinance meets the rational basis test. *Id.*

11

32. *Kentner*, 750 F.3d at 1280. Plaintiffs must show the Ordinance "was arbitrary and irrational and not rationally related to a legitimate government purpose." *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1284 (11th Cir. 2021).

Under rational basis scrutiny, governments "are not required to convince the courts of the correctness of their legislative judgments." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981). Rather, plaintiffs "challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true" by the government. *Id.* (quotation marks omitted); *see also Fresenius Med. Care Holdings, Inc.*, 704 F.3d at 945 (noting the "evidence casts doubt on the wisdom of the statute and suggests that perhaps a competitor out-lobbied Appellants before the Florida Legislature," but there was no evidence the "Legislature could not have possibly believed [the statute] . . . would reduce conflicts and improve health care"). This standard is "highly deferential," and courts hold legislative acts unconstitutional under a rational basis standard in only the most exceptional of circumstances. *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001).

The first step in the rational basis analysis is "identifying a legitimate government purpose—a goal—which the enacting government body *could* have been pursuing. The *actual* motivations of the enacting governmental body are entirely irrelevant." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)

(emphasis in original). The second step "asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose." *Haves v. City of Miami*, 52 F.3d 918, 922 (11th Cir. 1995). All that matters is "the *existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body.'" *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1214 (11th Cir. 1995) (emphasis in original).

The Complaint shows the City had a rational basis for enacting the Ordinance. *See, e.g.,* Doc. 1 ¶ 45; Doc. 1-3 at 2. Plaintiffs seem to challenge a legislative act, but they have not and cannot show the Ordinance lacks a rational basis. Instead, the Ordinance specifically lays out its predicate: an increase in criminal and violent activity within the DEA as well as an increase in other issues related to public safety and crowd control. *See* Doc. 1-3.[7] The Ordinance states that the City provides a "disproportionate" amount of resources to the DEA to combat the increase in violent and criminal activity that occurs after midnight. *Id.*

Plaintiffs themselves plead several rational bases for the Ordinance: (1) a number of shootings in 2021 and 2022 in or near the DEA (Doc. 1 ¶ 36); (2) 83% of respondents to a City survey report feeling unsafe in downtown Orlando (Doc. 1

---

[7] The district court must consider "the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments," and where those exhibits contradict the complaint's allegations, the exhibits control. *Reesey v. Fed. Emergency Mgmt. Agency*, No. 13-60488-CIV, 2013 WL 12086662, at *2 (S.D. Fla. July 9, 2013) (citing *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013)).

¶ 38); (3) "[i]n response" to the survey, "the City developed a plan to increase the police presence in the entire DEA" (Doc. 1 ¶ 38); (4) "[c]rime rates within the city increased" (Doc. 1 ¶ 34); (5) "more troublesome visitors," who were "more visible and present," came to "the DEA looking for trouble" (Doc. 1 ¶ 34-35); (6) the City was "[f]aced with a need for increased security downtown on a routine basis" (Doc. 1 ¶ 39); (7) there was a "shooting . . . behind the courthouse" (Doc. 1 ¶ 69).

Clearly, Plaintiffs disagree "with the wisdom or fairness of these rationales," but "this is simply not the test under a rational basis review." *Kentner*, 750 F.3d at 1281 (citing *Fresenius,* 704 F.3d at 945). From the face of Plaintiffs' Complaint, it is clear Plaintiffs cannot show the Ordinance lacks a rational basis. "Given these allegations and the 'exceptional' burden plaintiffs must bear in challenging the Ordinance under the rational basis standard," the Court must dismiss Count II. *Id*. (affirming dismissal of substantive due process claims "[b]ecause plaintiffs' substantive due process claims fail to survive rational-basis scrutiny").

Finally, the face of the Ordinance shows the Chief of Police does not have unfettered discretion. The Ordinance clearly states that the Chief shall base any decision on "whether and to what extent state-licensed private security or police protection is reasonably necessary inside and outside of permitted establishments for the purpose of traffic control and public safety" by looking to the "occupancy, type of alcohol license, traffic control, history of violent incidents that have

14

previously occurred at or were related to the establishment, and any other factor reasonably related to public safety." *See* Doc. 1-3 at 3. The Ordinance lists the reasoning for enactment, and the Complaint details the legitimate government purpose of public safety that the City was addressing in enacting the law. Doc. 1-3; Doc. 1 at ¶¶ 34-39. Such guidelines are rationally related to protecting the public and cannot amount to unfettered discretion under any standard.

The Chief of Police must also comply with the Economic Development After Midnight Alcohol Sales Permit Procedure (the "Procedure") when determining how to apply the Ordinance. *See* Doc. 1-4. The Procedure significantly restricts the conditions that can be applied to Plaintiffs' establishments under the permit. *Id.* Where police officers must follow additional guidelines, there is a large decrease in the likelihood that an ordinance will be subject to arbitrary and discriminatory enforcement. *See Joel v. City of Orlando*, 232 F.3d 1353, 1360 (11th. Cir. 2000). Thus, the substantive due process claim of Count II should be dismissed with prejudice.

**D. No Violation of Equal Protection Clauses (Count II).**

Likewise, because the Ordinance "neither targets a protected class nor implicates fundamental rights," the Court should apply "the rational basis test to [Plaintiff's] equal protection and due process claims." *Bannum, Inc. v. City of Fort Lauderdale, Fla.*, 157 F.3d 819, 822 (11th Cir. 1998). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor

15

infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "In an equal protection case of this type, however, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93 (1979).

This Court "may apply the 'rational basis test' even on a Rule 12(b)(6) motion," if the complaint challenges an ordinance that does not target a protected class or implicate a fundamental right. *Kentner v. City of Sanibel*, No. 2:11-cv-661-ORL-19KRS, 2012 WL 12861154, at *10 (M.D. Fla. Aug. 21, 2012), *aff'd,* 750 F.3d 1274 (11th Cir. 2014) (quoting *Serpentfoot v. Rome City Com'n*, 322 Fed. Appx. 801, 806 (11th Cir. 2009)). "This is particularly true where an equal protection claim is premised solely on a legislative act" because a legislative act "'is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Kentner*, 2012 WL 12861154, at *10 (quoting *Beach Commc'ns, Inc.*, 508 U.S. at 315). Ordinances challenged on a rational-basis review have "a strong presumption of validity," and it is Plaintiffs' "burden 'to negate every conceivable basis which might support it.'" *Beach Commc'ns, Inc.*, 508 U.S. at

16

315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). The absence of "legislative facts" in the record explaining a distinction made in legislation "has no significance in rational-basis analysis." *Id.* "Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Commc'ns, Inc.*, 508 U.S. at 313.

Like the substantive due process claim, Plaintiffs appear to challenge a legislative act. The Complaint demonstrates the City had a rational basis for enacting the Ordinance, which does not implicate a fundamental right or target a protected class, and instead affects Plaintiffs' state-created rights. Plaintiffs outline, at least in part, the City's rational basis for the Ordinance. *See, e.g.,* Doc. 1 ¶¶ 34-39 & 45. The Ordinance itself provides further insight into the City's rationale for passage of the Ordinance. Plaintiffs' objections to the City's rational basis "is constitutionally irrelevant to Plaintiffs' equal protection claims." *Kentner*, 2012 WL 12861154, at *11. Plaintiffs fail to allege facts permitting a reasonable inference that the City's public safety concerns and supporting reasoning as alleged in the Complaint provided no arguable basis for the enactment. Plaintiffs have not and cannot show the Ordinance lacks a rational basis.

Further, to the extent Plaintiffs claim other DEA businesses are not subject to the fees associated with the Ordinance, Plaintiffs cannot show they are being

17

treated differently than other similarly situated businesses. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). A plaintiff alleging selective enforcement can either allege discrimination based on a suspect classification or use a "class of one" theory. *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1045–1046 (11th Cir. 2008). Under either theory, a plaintiff must plausibly allege a "similarly situated" comparator. *See Griffin Indus. v. Irvin*, 496 F.3d 1189, 1204–05 (11th Cir. 2007) (finding that the "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination).

Plaintiffs have failed to properly allege that Orlando's sports and other venues, including bars with smaller capacities, that bring visitors to the DEA are sufficient comparators for an equal protection violation. A plaintiff's proposed similarly situated comparator "must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Lewis v. City of Union City*, 918 F.3d 1213, 1228 (11th Cir. 2019) (citing *Young v. UPS*, 575 U.S. 206, 231 (2015) (internal quotations omitted)). Here, Plaintiffs' businesses can be reasonably distinguished from sporting venues, hotels, and bars with smaller capacities. Establishments with smaller capacities are not proper comparators as it is rational for the

18

legislators to believe that different kinds and sizes of establishments have a different impact on public safety and crowd control within the DEA.

Florida has long distinguished between different types and sizes of establishments when considering regulations affecting the sale of alcoholic beverages. *See Hardage v. City of Jacksonville Beach*, 399 So. 2d 1077, 1078 (Fla. 1st DCA 1981) (holding that a ban on alcohol sales except for hotels and motels with 100 or more guests rooms, restaurants receiving most of their gross annual income from the sale of food, and private clubs was constitutional in the face of a challenge by the appellant who "admits he does not fit within one of the exceptions to the ordinance . . . . Under the power to regulate 'location' of liquor establishments, municipalities may permit one or more types of sale in a designated area without being required to permit all other modes of sale therein."). Therefore, the equal protection claim of Count II should be dismissed.

## V.  Conclusion

**WHEREFORE**, Defendants respectfully request this Honorable Court to render an Order dismissing all counts of Plaintiffs' Complaint with prejudice and awarding all other just and proper relief.

## Certificate of Conferral

On November 15, 2024, counsel for Defendants conferred in good faith with counsel for Plaintiffs, who objects to the relief requested in this Motion.

Respectfully submitted this 20th day of November 2024,

/s/Joshua Bachman
**Josh Bachman**
Florida Bar No.: 98238
josh.bachman@downsaaron.com
Secondary Email:
litigation@downsaaron.com
**Savannah Clifton**
Florida Bar No.: 1019346
Primary Email:
savannah.clifton@downsaaron.com
**DownsAaron, PLLC**
200 S. Orange Ave.
Suite 2250
Orlando, FL 32801
Phone: (407) 349-3949
*Counsel for Defendants*

### Certificate of Service

I HEREBY CERTIFY that on November 20, 2024, a true and correct copy of the foregoing was filed via CM/ECF which will provide an electronic copy to Christopher Brochu [cbrochu@vandwlaw.com], Pamela Levinson [plevinson@vandwlaw.com], Jeffrey Newsome, II [jnewsome@vandwlaw.com], Janet Varnell [jvarnell@vandwlaw.com], Brian Warwick [bwarwick@vandwlaw.com] of Varnell and Warwick, PA, 400 N. Ashley Drive, Suite 1900, Tampa, FL 33602 and Robert Peck [Robert.peck@cclfirm.com] of Center for Constitutional Litigation, PC, 1901 Connecticut Ave. NW, Suite 1101, Washington, DC 20009.

/s/Joshua Bachman
**Josh Bachman**
Florida Bar No.: 98238