UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

6064 NOA, LLC, 4654 NOA, LLC and
CELINE ORLANDO, LLC,

        Plaintiffs,

v.                                                     Case No.: 6:24-cv-1665-WWB-NWH

THE CITY OF ORLANDO and POLICE
CHIEF ERIC SMITH,

        Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Doc. 18), Plaintiffs' Opposition (Doc. 21) thereto, and Defendants' Reply (Doc. 27).[1] For the reasons set forth below, the Motion will be granted.

**I.    BACKGROUND**

Plaintiffs are small businesses that operate bars, clubs, and concert venues in a portion of downtown Orlando, Florida, that Defendant City of Orlando ("**the City**") has designated as the Downtown Entertainment Area ("**DEA**") since 2008. (Doc. 1, ¶¶ 6–18, 23–24). In the aftermath of the COVID-19 pandemic, the City became concerned about increased violent crime in the DEA. (*Id.* ¶¶ 34–37). To address these concerns, the City elected to increase police presence in the DEA, focusing on venues that attracted

---

[1] The parties' filings fail to comply with the Court's January 13, 2021 Standing Order. Further, Plaintiff's Opposition fails to comply with Local Rule 3.01(b), which provides that a response to a motion must be "no longer than twenty pages inclusive of all parts." In the interests of justice, the Court will consider the filings, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court will result in the striking of denial of filings without notice or leave to refile.

significant crowds. (*Id.* ¶¶ 37–39, 53). The City opted to finance the increased police presence by amending the City Code of the City of Orlando, section 33.03, effective May 2023. (*Id.* ¶¶ 42–45). This amendment implemented a special land use permit, the After Midnight Alcohol Sales Permit ("**AMS Permit**"), which allowed businesses in the DEA to sell alcohol after midnight, provided that those businesses implement certain security measures and agree to bear the costs of the increased police presence by paying a fee (the "**Police Protection Fee**") (*Id.* ¶¶ 42–52).

The number of officers assigned to a venue—and the amount of the accompanying Police Protection Fee—depend on the venue's occupancy limits, with venues with occupancy limits below 125 persons exempt from paying for any additional police presence to receive and maintain an AMS Permit. (*Id.* ¶ 53–56). Smaller venues may be required to hire police officers upon a finding by the Chief of Police, Defendant Eric Smith, that the venue "has had a disparate impact on traffic control, has had a history of violent incidents at the establishment, or as otherwise required for public safety." (*Id.* ¶ 53). Also excluded from the Police Protections Fee are venues that only sell beer and wine, hotels, convention centers, and "civic auditoriums and sports arenas . . . public lodging establishments . . . and motion picture theaters . . . so long as their principal business is not the sale, service, or consumption of alcoholic beverages." (*Id.* ¶ 57).

Plaintiffs allege that although approximately eighty-five businesses in the DEA carry an AMS Permit, only thirty-three (including Plaintiffs) pay the Police Protection Fee associated with hiring and deploying the additional police presence. (*Id.* ¶ 56). Plaintiffs allege that although part of the discrepancy results from the exemption for smaller venues, the City has also arbitrarily allowed larger venues, including auditoriums, arenas,

and hotels, to hold AMS Permits without hiring additional police. (*Id.* ¶ 60–65). Plaintiffs accordingly bring the instant suit pursuant to 42 U.S.C. § 1983, alleging violations of the Takings Clause of the Fifth Amendment, and substantive due process rights and equal protection guaranteed by the Fourteenth Amendment. (Doc. 1, ¶¶ 103–141).

II. **LEGAL STANDARD**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a complaint alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III. **DISCUSSION**

As an initial matter, it appears that the Complaint is an impermissible shotgun pleading with respect to Count II. "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. BellSouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)). "[S]hotgun pleadings wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (alteration in original) (quotation omitted). As such, "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (noting that shotgun pleadings drain judicial resources, and the district should act *sua sponte* to define the issues at the earliest possible stage).

The Eleventh Circuit has defined four types of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second most common type "is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any

4

particular cause of action." *Id.* at 1322. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

In Count II, Plaintiffs seek relief under two distinct legal theories: substantive due process and equal protection, both arising under the Fourteenth Amendment. (Doc. 1, ¶¶ 127–141). Count II thus falls into the third type of shotgun pleading by failing to separate "into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1323. The Court could dismiss the Complaint on this ground alone. However, in the interests of judicial economy, the Court will address Defendants' arguments regarding the substance of Plaintiffs' allegations.

### A. Claims Under the Takings and Due Process Clauses

Defendant first argues that Counts I & II must be dismissed because Plaintiff has failed to establish a constitutionally protected property interest. To state a claim under the Takings Clause, "a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected." *Givens v. Alabama Dep't of Corrs.*, 381 F.3d 1064, 1066 (11th Cir. 2004). Similarly, a plaintiff alleging a violation of due process must establish "(1) a deprivation of a constitutionally protected property interest, (2) state action, and (3) a constitutionally inadequate process." *Lexra, Inc. v. City of Deerfield Beach*, 593 F. App'x 860, 863–64 (11th Cir. 2014) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "State law forms the basis for an alleged deprivation of a

constitutionally protected property interest." *Id.* at 864 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

In their Opposition, Plaintiffs argue that the Police Protection Fees associated with their AMS Permit are so excessive that they deny "substantially all economically beneficial or productive use" of the real property where Plaintiffs' establishments are located. (Doc. 21 at 7) (quoting *Tampa-Hillsborough Cnty Expressway Auth. v. A.G.W.S. Corp.*, 640 So. 2d 54, 58 (Fla. 1994)). In Plaintiff's view, the AMS Permit is a land-use regulation that implicates their protected interest in using their land in accordance with their "reasonable investment-backed expectations." (*Id.*) (quoting *Cedar Point Nursey v. Hassid*, 594 U.S. 139, 148 (2021) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). Further, because the AMS Permit and accompanying Police Protection Fee frustrate those expectations, Plaintiffs contend that they amount to a regulatory taking.

In the Court's view, however, Plaintiffs' framing is too broad. Review of the Complaint shows that Plaintiffs' claims arise specifically from their interest in "obtaining or maintaining a land use permit to sell alcohol after midnight" as conditioned by the AMS Permit and the Police Protection Fee. (Doc. 1, ¶ 125). This interest arises solely out of Plaintiff's license to sell alcohol. That license is not a right, but rather is a privilege granted by the state government and expanded on by the City. *See United States v. McGurn*, 596 So. 2d 1038, 1041 (Fla. 1992) ("[A] liquor license is not like other 'general intangibles' because it is issued as a matter of privilege, not as a matter of right, by the government."); *see also* Fla. Stat. § 562.14 (prohibiting sale of alcohol between the hours of midnight and 7:00 AM, except "as otherwise provided by county or municipal ordinance."). Both Florida courts and the Eleventh Circuit hold that a "license to sell alcohol is not a property

6

interest in Florida for the purposes of a constitutional claim." *Lexra, Inc.*, 593 F. App'x at 864; *see also Walling Enters., Inc. v. Mathis*, 636 So. 2d 1294, 1296–97 (Fla. 1994) ("This Court has specifically determined that a liquor license 'is not property in a constitutional sense.'" (quoting *State ex rel. First Presbyterian Church v. Fuller*, 187 So. 148, 150 (Fla. 1939))); *Yarbrough v. Villeneuve*, 160 So. 2d 747, 747–48 (Fla. 1st DCA 1964) (holding that although a liquor license is considered property "in a commercial sense," a liquor license "under the laws of this state is but the grant of a privilege which confers no vested rights in the licensee and as such is not property in the constitutional sense.").

Plaintiffs acknowledge these authorities but nonetheless argue that their liquor licenses suffice as protected property interests because Florida law recognizes that such licenses possess a "quality of property." (Doc. 21 at 15) (citing *Walling Enters.*, 636 So. 2d at 1297)). But Plaintiffs fail to address that Florida has "taken care to distinguish the commercial context from the constitutional" with respect to the nature of a liquor license. *Persaud Props. FL Invs., LLC v. Town of Fort Myers Beach*, 658 F. Supp. 3d 1072, 1081 (M.D. Fla. 2023); *see also Walling Enters.*, 636 So. 2d at 1297 (liquor licenses possess "the quality of property" allowing them to be assigned, transferred, and be subject of a lien or security interest.). The Court accordingly concludes that Plaintiffs' claims under the Takings Clause and for violation of due process fail for want of a constitutionally cognizable property interest. *See Givens*, 381 F.3d at 1066 (11th Cir. 2004); *Lexra, Inc.*, 593 F. App'x at 863–64. To conclude otherwise would be to contradict clear authority, which this Court will not do.

### B. Claim Under the Equal Protection Clause

The Court now turns to Plaintiffs' claim for violation of the Fourteenth Amendment's Equal Protection Clause. Plaintiffs do not dispute that Section 33.03 of the City Code of the City of Orlando does not target a protected class or implicate a fundamental right. Accordingly, it is subject to rational basis review regarding Plaintiff's equal protection claim. *See Ga. Manufactured Hous. Ass'n, Inc. v. Spalding Cnty, Ga.*, 148 F.3d 1304, 1306–07 (11th Cir. 1998). Under rational basis review, Defendants will prevail if the differential application of the Police Protection Fee are rationally related to the achievement of some legitimate government purpose. *Id.*; *see also Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").

The Court's analysis under rational basis review is twofold. First, the Court must "identify[ ] a legitimate government purpose—a goal—which the enacting government body *could* have been pursuing." *Haves v. City of Mia.*, 52 F.3d 918, 921 (11th Cir. 1995). "The *actual* motivations of the enacting governmental body are entirely irrelevant." *Id.* Second, the Court asks, "whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose." *Id.* at 922. The proper inquiry addresses the "*existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body." *Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1546 (11th Cir. 1994). As long as the relationship between the statutory classification and its goal is "not so attenuated as to render the distinction

8

arbitrary or irrational," the challenged enactment will survive rational basis review. *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).

The Court may apply rational basis review even at the dismissal stage where a plaintiff challenges a legislative enactment that "neither targes a protected class nor implicates fundamental rights of the Fourteenth Amendment." *Kentner v. City of Sanibel*, No. 2:11-cv-661, 2012 WL 12861154, at *10 (M.D. Fla. Aug. 21, 2012) (quoting *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 806 (11th Cir. 2009)). This is particularly appropriate for an equal protection claim premised solely on a legislative act because "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315.

Here, Plaintiff's base their equal protection claim on the City's disparate application of the Police Protection Fee. Specifically, Plaintiffs allege that there is no rational basis for the City to impose the Police Protection on larger venues, like Plaintiffs', but not on smaller venues, who pay no fee at all. Further, Plaintiffs allege no rational basis justifying exempting from the Police Protection Fee certain larger venues, including hotels, arenas, and theaters.

Applying the first step of rational basis review, the Court concludes that the City could have been pursuing a legitimate government purpose in enacting the AMS Permit and the Police Protection Fee. Specifically, the City could have sought to promote public health and safety by enacting a scheme that would reduce the sale of alcohol in the DEA after midnight and increase police presence around venues that sell alcohol. *See Joel v.*

*City of Orlando*, 232 F.3d 1353, 1358 (11th Cir. 2000). Indeed, the allegations in the Complaint reflect this intent. (Doc. 1, ¶¶ 35–37).

As to the second step, the Court concludes that a rational basis exists for believing that allocating the financial burden of additional police based on venue occupancy limits would further public safety. The City might reasonably have believed that establishment with larger crowds present greater risks to public safety, and distribute the burden of additional police presence accordingly. Further, there is a rational basis for the distinction between the types of venues Plaintiffs operate—clubs, bars, concert venues—and other venues, including hotels, auditoriums, and sports arenas. The City could have rationally concluded that visitors to the latter types of venues consume less alcohol and leave the DEA before the hours of the night when the incidence of crime tends to increase. Accordingly, section 33.03, the AMS Permit, and the classifications for the Police Protection Fee survive rational basis review.

Plaintiffs contend, however, that these justifications fail to hold water. For instance, Plaintiffs allege that the City arbitrarily imposes the Police Protection Fee even when Plaintiffs' venues are closed. Moreover, Plaintiffs argue that Defendants fail entirely to account for the cumulative impact that smaller venues, and the crowds they attract, have on public safety in the DEA. These arguments fails because they question only the "wisdom, fairness, or logic" of the City's classifications as to the Police Protection Fees. *Beach Commc'ns, Inc.*, 508 U.S. at 313; *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 944 (11th Cir. 2013) (affirming summary judgment on equal protection claim and rejecting arguments going to "the wisdom of the statute, not to its burden on commerce." (quotation omitted))). Defendants' Motion will be granted.

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 18) is **GRANTED**.

2. This case is **DISMISSED with prejudice**.

3. The Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on September 10, 2025.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record